No. 29,286.

W. T. CAMPBELL, *Appellant* and *Appellee,* v. H. B. GOOCH and H. C. COOPER, *Appellees* and *Appellants.* .

(292 Pac. 752.)

Opinion filed November 8, 1930.

*R. E. Coughlin, E. H. Coughlin,* both of Paola, *Edmund H. McVey, Samuel R. Freet* and *Lester G. Seacat,* all of Kansas City, Mo., for the appellant.

*Frank M. Sheridan* and *Bernard L. Sheridan,* both of Paola, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: W. T. Campbell brought this action against H. B. Gooch and H. C. Cooper to recover damages for alleged fraudulent representations by the defendants concerning the sale and purchase of plaintiff's interest in certain oil and gas leases. A motion of the defendants to strike out the principal parts of the plaintiff's petition was sustained and later the court dismissed the action. Plaintiff appeals.

The principal allegations of the petition are that the plaintiff, Gooch, L. R. Goudie, C. E. Hudson and others had purchased two oil-and-gas leases in Miami county, designated as the Barker lease and the Waterhouse lease. The substance of the allegations are that sometime in 1927, between March 11 and June 1, explorations were begun on these leases, managed by Gooch, an experienced oil-and-gas prospector and operator; that he advised and directed the work and led his associates to believe that they could rely on his judgment and representations as to the exploration and development of oil properties. That the plaintiff was engaged in business in Kansas City, Mo., and was without experience in such explorations, a fact well known by Gooch, and that plaintiff did rely on the representations and advice of Gooch and on the management of the enterprise by Gooch. C. E. Hudson, one of the joint owners who aided in carrying on the work, reported to plaintiff from time to time as to the progress made, and that Gooch knew that Hudson would report his representations to plaintiff and give him information as to prospecting and drilling on these leases. Two wells were drilled on the leases without finding gas or oil in paying quantities, and the indications then were that the leases were of little value for the production of oil or gas. The further allegation was made that after this discovery and failure, Gooch obtained a lease on the Schwartz land in the same section and on May 15, 1927, began drilling a well on the Schwartz land, about 300 feet from the center of the Barker lease, and about one-fourth of a mile from the Waterhouse lease. This well he completed on May 31, 1927, and it turned out to be a paying well, that is, it would produce about 150 barrels per day. As the result of this discovery, it is alleged the value of the Barker and Waterhouse leases was greatly enhanced; that Gooch and Cooper, knowing of this increase in value, entered upon a fraudulent scheme to procure the interest of plaintiff in the Barker and Waterhouse leases, namely, one-fourth thereof, at a price far below its actual value. This Gooch did by closing down operations on the Schwartz well, covering up the slush ponds and other places bearing evidence of the production of oil, discharged the employees working on the well and gave the place the appearance that the project had been abandoned, and in that connection Gooch falsely and fraudulently reported to those interested in oil properties near the Schwartz well that oil in paying quantities had not been found. In response to an inquiry by Hudson, his coöwner,

Gooch stated that the Schwartz well was a dry hole, and that the Barker and Waterhouse leases were worthless, and in furtherance of his fraudulent design he told Hudson that he knew a party—meaning the defendant Cooper—who showed an interest in the Barker and Waterhouse leases, and might be induced to buy them if the interest owned by plaintiff, Hudson and Goudie, could be obtained, Gooch well knowing that these false representations would be reported to plaintiff. Thereafter Hudson and Goudie visited the Schwartz well, found it to be shut down and apparently abandoned, but noticed some evidence of oil about it. As to this, Gooch told him that there was a showing of oil, but that after drilling some distance below, he found that oil in paying quantities had not been discovered. He also stated that based on his knowledge of the Schwartz well and what had been previously discovered on the Barker and Waterhouse leases, the latter were valueless as oil properties. He stated that the parties mentioned as being interested in these leases would purchase them if all the interests of plaintiff, Goudie and Hudson could be obtained, and if that was done these owners could recoup in part the losses they had sustained in prospecting the properties. Thereafter Goudie and Hudson reported to plaintiff what Gooch had told them, including the proposal of finding a purchaser for the Barker and Waterhouse leases.

It is alleged that, relying on the representations of Gooch so communicated, and as Gooch intended they should be, plaintiff was induced to sell his one-fourth interest in part of the leased ground for $750, a sum far below its real value. Gooch arranged with his three coöwners to meet the proposed purchaser in Kansas City, and when they came together he introduced them to the defendant, Cooper, whereupon the transfer was made. Cooper, it was alleged, was a party to the fraudulent scheme, knew of the discovery of the oil on the Schwartz land and of the false representations which had been made to the plaintiff, in order to procure for Gooch and Cooper the plaintiff's interest at a small part of its value. Cooper, it is alleged, had not only knowledge of the fraud practiced on plaintiff, but accepted the fruits of the fraudulent scheme. By reason of these alleged frauds of Gooch and Cooper plaintiff has been damaged, he asserts, to the extent of $25,000, for which he asks judgment.

It is conceded that the motion to strike the principal allegations of plaintiff from the petition was the equivalent of a demurrer to it,

and the defendants contended in the trial court and are insisting here that the facts stated in the petition did not state a cause of action against the defendants.

The plaintiff contends that the petition sets forth false and fraudulent representations made by Gooch relating to a material fact, sufficient as a basis for actionable fraud; that they were made with the intention that the statements would be communicated to plaintiff and would thereby induce him to sell his interest in the leases owned by Gooch and his partners, including plaintiff, at a trifling sum far below its actual value, for the benefits of Gooch and Cooper. Cooper, having knowledge of Gooch's false statements and fraudulent purpose, joined Gooch in a conspiracy to defraud the plaintiff. The false representations were made about a matter material to the sale. All knew that the discovery of oil in paying quantities in the Schwartz well, owned and drilled by Gooch, located only 300 feet from the leases in which plaintiff as a partner of Gooch was interested, would necessarily enhance the value of the adjoining leased land owned by the partnership. If the Schwartz well had proven to be unproductive, or, as Gooch reported, a dry hole, plaintiff would have no ground of complaint. It is stated that it was a good producing well and therefore the false representation that it was unproductive and a dry hole, made to deceive his partners and induce them to sell the partnership leases, naturally led plaintiffs to accept the representations as the truth and accept the offer which, as Gooch suggested, would enable plaintiff to recoup his losses resulting from prospecting of the leases.

Defendants, however, argue that as Gooch owned the Schwartz well and used only his own money in development, he was under no obligation to tell plaintiff or Goudie and Hudson the truth about it. They assert that plaintiff had no financial interest in the Schwartz well and it was no concern of plaintiff whether Gooch told the truth in regard to the finding of oil in his own well.

There might be something in defendant's contention were it not that it is alleged that the representations were made to accomplish the fraud of procuring the sale of the Barker and Waterhouse leases, jointly owned by plaintiffs and defendants. The fraud upon which a recovery is based was the fraudulent procurement of a sale of interests in the Barker and Waterhouse leases for a price much less than their value. As between Gooch and his partners those false representations as to the value of the leases pertained directly

to the leases which plaintiff and his associates were induced to sell by the fraud mentioned. Under the averments of the petition, the fraud charged, we think, is actionable.

In a case quite closely in point it was held:

"In an action for inducing a part owner of an oil-and-gas lease to sell to another part owner by falsely representing that a well dug in the neighborhood would be a dry hole, although the purchaser knew that the well was then producing, such statement, although in the form of an opinion, being made for the purpose of deceit as to a matter within the knowledge of the person expressing it, was sufficient to form a predicate for actionable fraud." (*Zundelowitz v. Waggoner,* 211 S. W. 598, ¶ 2.)

It is further argued by defendants that the misrepresentations were not made directly to the plaintiff, and therefore he could not rely on nor base a cause of action upon them. It is expressly alleged that they were made to others with the intent and purpose that the false statements should be transmitted to plaintiff and be believed and relied upon by him, to the end that plaintiff might be induced to sell his interest in the leases to defendants for a price far below its real value.

A liability may arise upon false representations intentionally made to deceive, if made with the intent or knowledge that they would be communicated to the injured party and induce action by him." In 26 C. J. 1121 it is said:

"It is not necessary that representations should have been made directly to the complainant, as recovery can be had for representations made to another with the intent or knowledge that they should or would be repeated to complainant. Thus, where one deliberately gives a written false statement to another with knowledge that it is to be used to deceive a third party, he is liable in fraud to such third party."

Authorities are there cited sustaining the view that even where misrepresentations are made to the public at large, or to a class of persons, with the intention of influencing any member of the public or of the class to whom they may be communicated, anyone injured through proper reliance upon the representations may recover against the one making the false representations with the intent to deceive. (See, also, 12 R. C. L. 326.) Gooch was in a position to know the truth of the representations made, and according to the petition he knew at the time they were made that they were false. They were made to persons with the intent and knowledge that they would be reported to plaintiff with the purpose to deceive him. He relied on the truth of Gooch's statement and made a sale of

property to his injury and loss. The fraud pleaded was perpetrated by defendants in order to derive benefit for themselves at the expense and injury of plaintiff. On the facts pleaded we think the latter is entitled to redress. (*Grain Co. v. Railway Co.,* 94 Kan. 446, 146 Pac. 1180.)

Other contentions by defendants are not deemed to be material.

It follows that the rulings sustaining the demurrer and dismissing the action must be reversed and the cause remanded for further proceedings.

It is so ordered.